JOSEPH S. WHITCOMB

v.

PATRICK J. EUSTACE ET AL.

MECHANIC'S LIEN—RELEASES—SUB-CONTRACTORS.—The court is of opinion from a consideration of the testimony, that the non-fulfillment of the contract to erect the buildings in question was occasioned by the fault and neglect of the contractor himself, and hence he is not entitled to a mechanic's lien.    It further appears, that after the work had progressed for a time, the contractor executed to the appellant a release of all claims for mechanic's lien; and being by the building contract, responsible for the erection and completion of the buildings, the sub-contractors and material men took their contracts subject to the fulfillment of his, and are equally bound by it, and not entitled to a lien.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.    Opinion filed August 5, 1880.

These were mechanic lien proceedings, and embrace four cases which were consolidated and heard in the Superior Court of Cook County, where a decree was entered in favor of the several lien claimants for various sums, with the usual order of sale.

Whitcomb v. Eustace.

The bill of complaint of Michael F. Reily sets forth that on the 26th day of April, 1875, he entered into a contract with appellant, Joseph S. Whitcomb, to build for him a block of three dwelling houses, and furnishing all the materials therefor, for which he was to be paid $4700 in money, and a house and lot on Walnut street, valued at $4000. That he entered upon the work, and while proceeding with the erection of the buildings in strict accordance with the terms of the contract, and when the same were nearly completed, Whitcomb ordered him and his workmen to stop work, took the job out of his hands, and refused to let him finish the buildings ; that complainant afterward sent men there, and offered to complete the buildings according to the plans and specifications, but Whitcomb drove them away and would not let them complete the same.    The bill alleges that complainant did extra work to the amount of $765, for which, under the provisions of the contract, he is also entitled to a lien.

The bill further alleges that by the provisions of the contract when complainant had done $4000 worth of work Whitcomb was to deposit a deed and abstract of title to the Walnut street house and lot, in a bank mutually agreed upon, and when the buildings were finished, the deed was to be delivered and the property transferred to Reily, or in default thereof Whitcomb was to pay complainant $4000 in cash; that complainant went on and did said $4000 worth of work and called upon Whitcomb to deposit the deed in the Third National Bank, as the proper depository, which he refused to do, and thereby became liable to pay said $4000 in cash to complainant.    The bill alleges that Whitcomb took possession of the buildings shortly after stopping the work, and proceeded to finish them himself, and thereby accepted the same; that complainant has received from Whitcomb only the sum of $1585, and that there is now due him under the contract $6325.50 and interest thereon from July 15, 1875.

The answer of Joseph S. Whitcomb to complainant's amended bill admits the making of the contract, and that complainant commenced work on the buildings, but alleges that complainant wholly failed to comply with the terms of the contract

in respect either to the character of the work or materials furnished, and gives a list of many serious defects in the materials used and the manner in which the work was performed; alleges that from time the architect notified complainant of the defects in the workmanship and materials, and refused to give him certificates for work done, for the reason that the work was not in accordance with the contract; alleges that it was greatly to complainant's interest to have had said buildings completed and to convey the Walnut street house and lot to complainant, which defendant was ready and willing at all times to do, upon complainant's complying with the terms of the contract, in relation thereto on his part.

Alleges that complainant about July 1, 1875, abandoned the work, leaving the buildings in an incomplete and unfinished state, and defendant was compelled to employ other workmen to complete the same at a considerable loss. The answer further alleges that complainant on the 8th day of July, 1875, by his release duly executed for a valuable consideration, released and discharged the premises from any and all mechanic's liens thereon.

The complainants, Rinehart & Co., Kastens and Eustace, were sub-contractors under Reily. Rinehart & Co. allege that they made a contract with Reily for the carpenter work, for which they were to be paid $3300 for labor and materials; that not deeming Reily responsible, they saw appellant who agreed to be responsible to them for the pay. That they duly served on Reily a written notice of their claim, and that there is due to them $1230.

The answer of appellant alleges that he has no knowledge of any contract between complainants and Reily; denies that he agreed to become responsible to them for the carpenter work, admits service of the notice August 19, 1875, and says he paid Reily nothing after receipt of notice, and that he was not indebted to him on the building contract.

The complainant, Kastens, alleges the making of a contract with Reily for the brick work; that he furnished the brick and gave notice to appellant of his claim; and avers that there is due to him therefor $180.

The answer of appellant admits the receipt of the notice, but denies knowledge of any contract between complainant and Reily, and alleges that he paid nothing to Reily after the receipt of the notice, and that nothing was due to Reily on the building contract.

The bill and answer in the Eustace case are substantially the same as in Kastens, except that the claim is for roofing, and the amount $65.

The cases being consolidated, were referred to Benjamin D. Magruder, Esquire, master in chancery, to take proofs and report upon the issues of law and fact involved therein. He reported that the testimony showed it was Reily's fault that he did not finish the work in accordance with the contract, and was stopped before being completed by him; and that he is of the opinion that Reily is not entitled to any lien upon the buildings, and that the prayer of his petition and the relief sought by the other petitioners should be denied.

Upon exceptions to this report, it was disapproved by the court, the chancellor finding that appellant had failed to perform his part of the contract, and that such failure was a sufficient excuse for, and the cause of the failure on the part of Reilly in performing in full his part of the contract; and thereupon the case was re-referred to the same master with instructions to find and report to the court how much the work done, and materials furnished by Reily and those under him were reasonably worth, according to the original contract price therefor, and to find and report how much the work done or materials furnished by each of the sub-contractors were reasonably worth, and how much it was worth to complete the buildings according to the plans and specifications over and above the amount of the labor done, and materials furnished by Reily and those under him.

Upon the coming in of the master's second report and a final hearing of the cause, the court decreed that the complainants were entitled to liens, respectively, as follows: Michael F. Reily, $2940; Rinehart & Co., $1230; Louis Kastens, $180; Patrick J. Eustace, $65, with usual order of sale in case of non-payment of the several amounts so found to be

due.   Whitcomb brings the case to this court by appeal, and assigns various errors as grounds for reversal.

Messrs. AVERY & COMSTOCK, Mr. F. A. MITCHELL and Mr. L. E. DeWOLF, for appellant; generally against the right to a recovery by reason of the defective performance of the contract, cited Mehrle v. Dunne, 75 Ill. 239; Phillips on Mechanics' Liens, § 134.

The release need not be under seal: Wentz v. DeHaven, 1 Serg. & R. 312; Benjamin v. McConnell, 4 Gilm. 536; White v. Walker, 31 Ill. 422; Ill. Cent. R. R. Co. v. Rand, 37 Ill. 484.

There was a sufficient consideration for the release: Jackson v. Alexander, 3 Johns. 434; 3 Washburn on Real Prop. 322; Strong v. Dean, 55 Barb. 337; Benjamin v. McConnell, 4 Gilm. 536; 1 Parsons on Contracts, 357; Chitty on Contracts, 7; Selwyn's Nisi Prius, 39; McKinly v. Watkins, 13 Ill. 140; 1 Smith's Lead. Cas. 465.

The effect to be given to a release must be determined by the circumstances of each case: Phillips on Mechanics' Liens, 390; Mines v. Macon, 3 Kelley, 333.

A release as to one of the parties is a release as to all: Wann v. McNulty, 2 Gilm. 355; Hall v. Rochester, 3 Cow. 374; Benjamin v. McConnell, 4 Gilm. 536.

The release should be construed most strongly against the releasor: Jackson v. Stackhouse, 1 Cow. 122.

Mr. A. B. JENKS, Mr. JAMES L. ALLEN and Mr. ARNOLD TRIPP, for appellees; that waiver is a question of intent, cited Phillips on Mechanics' Liens, § 273.

Without a consideration, the release is void: Jackson v. Stackhouse, 1 Cow. 122; Crawford v. Milspaugh, 13 Johns. 87; Chitty on Contracts, 855.

Going to trial without a formal issue, it will be considered as waived: Corbus v. Teed, 69 Ill. 209; James v. Conway, 5 Gilm. 227; Stark v. Hellebut, 19 Ill. 344; Marple v. Scott, 41 Ill. 50.

WILSON, J.   An examination of the evidence has satisfied

Whitcomb v. Eustace.

us that the court below erred in sustaining the exceptions to the master's first report, and in subsequently entering a decree for the complainant.

We shall not undertake to go over the evidence in detail, which is very voluminous and more or less conflicting, but we think it sufficiently appears from the entire proofs that appellee Reily failed to perform his part of the contract, and that such failure was not caused by the fault of appellant; and we are further of the opinion that the liens in favor of Reily and Rinehart & Co., if any existed, were waived by their respective releases.

It is not claimed by Reily that he completed the buildings, but he alleges various acts and omissions on the part of appellant, by way of excuse for the non-fulfillment of his contract, and among others that appellant failed to make payments as stipulated by the contract, whereby he was embarrassed and delayed in the prosecution of the work for the want of means; that the architect wrongfully refused to give certificates for work done; that appellant refused to deposit a deed and abstracts for the Walnut street house and lot, as required by the contract; and finally, that appellant, in the absence of Reily, drove off his workmen and refused to allow them to complete the buildings.

We do not think these alleged excuses are sustained by the proofs; and such was the conclusion reached by the master, after an elaborate and manifestly careful consideration of the case. We look into the record in vain for a motive that should have prompted appellant without cause to break off a contract which apparently was beneficial to him, and which, it must be supposed, he would naturally wish to have carried out. He had borrowed $5000, which, added to the $4000 allowed for the Walnut street property, placed him in funds to complete the buildings. His interest was to be subserved by their speedy completion in order to obtain the benefit of the rental to be derived from them. Under these circumstances he would not be likely to put an end to the contract, either by refusing payments or intentionally doing anything violative of the terms whereby the other party might claim to be released, nor do we think he has done so.

The agreement was in the usual form of building contracts by the terms of which the architect was made the superintendent of construction, and umpire as to any and all disputed matters growing out of its execution, and his decision in relation thereto was to be final. Appellant was required to make payments only upon his certificates. It appears by the proofs that all the certificates issued by the architect were paid, and appellant had made provision for payments of all others as fast as the work progressed. He had deposited the funds for that purpose with the Mortgage Company, and the money was made a pledge in the hands of Hale, acting for the company, for the specific purpose of erecting the buildings in question, and was held and used solely for that purpose.

Hale says: " We didn't pay any of the loan to Whitcomb. We agreed to pay this out, as the buildings progressed. We paid Reily whenever he brought the proper certificates from the architect."

It is thus evident that the delays and ultimate stopping of the work was the result of some other cause than the alleged failure of appellant to make the stipulated payments.

The proof shows that before the work stopped, and indeed from an early period in its progress, frequent complaints were made by Clifford, the architect, as well as by appellant, in relation to the character of the work, and the materials used in the construction of the building.

Clifford repeatedly notified Reily that he was not doing the work according to the contract, and admonished him not to disregard the specifications, either in respect to the materials used, or the character of the workmanship. On several occasions he served written notices on Reily, calling his attention to specific violations of the contract, both as to workmanship and materials, and notifying him that the same was not satisfactory, and would not be accepted. It also appears that Reily was absent more or less of the time, engaged on other jobs and that the work was not making satisfactory progress.

The delays occasioned by controversies in relation to the character of the workmanship and the materials used in the construction of the buildings, as a natural consequence occa-

sioned more or less delay in the obtaining by Reily of the architects' certificates for work done, and consequent delay in the receipt of his pay, but whatever delay there was, was not attributable, so far as the evidence discloses, to the fault of appellant, and it seems to be fairly inferable from all the proofs in the case, that appellant became justly apprehensive that his block of buildings when completed would be of inferior quality, and not such as he was entitled to under the contract.

On August 11, 1875, Clifford served on Reily the following notice:

"MICHAEL F. REILY—*Sir:* By virtue of the power vested in me as architect and superintendent of J. S. Whitcomb's buildings, I hereby notify you that in common with your other deviations from the contract and accompanying plans and specifications you have repeatedly refused or failed to comply with the requirements of the written notifications given you by me, copies of which I have in my possession; and in spite of the most distinct protestation against such a disregard for the interests of the said Whitcomb, you have built a portion of the front wall of his buildings, 8 inches thick instead of 12 inches; that you have built the rear, sides and party walls of imperfectly burned red brick instead of hard burned gray brick, as the specifications called for; and that the said common red brick-work contains latent defects peculiar to the brick which developed themselves by exposure to the weather; that the ruble stone foundation walls are not of the dimensions indicated by section or elevation, to which circumstance the cracks and splits in parts of defective walls owe their origin. That by reason of your concealment of the plans and specifications for upwards of three weeks, there was no possibility of ascertaining the exact dimensions of said foundations.  *  *  *  That in the absence of any other objection to the imperfections of your work, the roof of the said Whitcomb buildings is of an inferior quality, and not in comformity with the requirements of the plans and specifications, which call for a roof worth $5 per square, and guaranteed for five years. That, inasmuch as you laid the curb-walls on the top of the ground instead of a trench of suitable dimensions, in accordance with the plans and specifications, the contract entered into between yourself and the

said J. S. Whitcomb was forfeited by you May 8, 1875. That in the face of these formidable considerations and your previous and subsequent deviations from the contract, you have waived all rights in the premises, owing to the inferiority of the materials no less than. the unworkmanlike condition of the buildings, which .are unsatisfactory and will not be accepted by me as architect and superintendent of the said J. S. Whitcomb's buildings."

" "JOHN CLIFFORD."

Without stopping to consider the question as to the conclusiveness of the architect's decision, we are of the opinion, from the proofs in the case, taken as a whole, that Reily failed in several essential particulars to fulfill the contract—and even if it be conceded that appellant took the job out of Reily's hands and refused to allow his workmen to finish the buildings, we think he was justified in so doing.

Appellant denies that he stopped the work, and insists, on the contrary, that he was anxious to have Reily go on and complete the buildings, in accordance with the terms and specifications of the contract; and there is much evidence in the record tending to support this position, evidence of requests from both appellant and Hale that Reily would proceed and finish the work, and that the latter repeatedly refused to do so, on the ground that he was not able to go on; that the times were hard and he hadn't money enough to proceed any further.

These requests and refusals are testified to by several witnesses—among them the architect and Hale, who urged Reily to take the Walnut street property, being anxious to have the buildings completed in order to add to the security of the Mortgage Company's loan; and if they may be considered as proven, it would seem to be a fair inference that Reily found he had agreed to take too large a proportion of his pay in real estate, leaving him without sufficient means to carry on this and other jobs which he had on hand, and so he concluded to abandon this one.

In respect to the releases, the evidence shows that the last payment made to Reily himself was made June 8, 1875. The

amount of this payment was $300, and it was made, as all previous ones had been, by Hale's checks.   At the time of receiving this check, he gave to Hale a release in the following words:   "For value received of Daniel H. Hale & Co., I hereby release the three brick buildings in Walton place, situated on lot four, block 13, in Kinzie's subdivision, in the Canal Trustees' subdivision of the fractional half of piece of section three, town 39, north of range 14, east of the third principal meridian, from all liens, claims and demands for work and labor, and for all the materials mentioned below and used in said buildings, and which were furnished by us."

"M. F. Reily."

The release was not under seal, and it is insisted by appellee that there was no consideration for the release, because Reily was only receiving from Hale what he was entitled to for work done under the contract.   It is a familiar principle that the settlement or compromise of disputed claims, no matter where the right turns out to be, is a sufficient consideration for an agreement, and mutual promises made at the same time are reciprocal considerations, and will support each other. McKinley v. Watkins, 13 Ills. 140.

The evidence shows that prior to and at the time of the making of the release, there existed a controversy between the parties about the way in which the buildings were being constructed.   Appellant was protesting that the work was not being done according to the contract, and was not being pushed forward as it should be: the architect was notifying Reily that the work was unsatisfactory and would not be accepted.   Hale says, "He came to me for money, and I told him the way the building was going was very unsatisfactory to us; we would not pay over any more money unless we were satisfied they were going to be finished, and we were guaranteed against mechanics' liens.   *  *  *   I paid him the money, provided he would sign the waiver of mechanics' lien, which I would not do unless he did that, for the reason that he had troubled me a good deal before, when I had loaned some money previously.   We had a good many talks on the subject, and I finally told him if he would sign a waiver of

mechanics' lien I would pay him the money from time to time, as the work progressed, and he did so."

A few days later, on the 12th day of June, Rinehart & Co., the carpenters, executed a like release upon being paid $240, and subsequently they were paid other sums in pursuance of Hale's promise to do so at the time of the execution of the Reily release.

In paying out this money and taking the releases Hale was the agent of appellant. It was appellant's money, borrowed of the Mortgage Company upon the security of the property being improved, and while the company was equally interested with appellant in seeing that the title to the property was kept clear of liens, the release inured none the less to the benefit of appellant.

It is insisted that appellant refused or failed to deposit a deed and abstract of title to the Walnut street house and lot, as required by the terms of the contract. This claim is wholly unsupported by the proof; on the contrary, the evidence abundantly shows that appellant was always ready to comply with the provision of the contract in that regard, as soon as Reily should have fulfilled the prescribed condition that entitled him to such deposit.

Many other points were raised by counsel, which, in the views we have taken of the case, it becomes unnecessary to consider. If Reily has not fulfilled his contract, and was not prevented from doing so by the fault of appellant, and so is not entitled to a lien, neither can his sub-contractors recover. By the building contract Reily was responsible for the erection and completion of the buildings at the time and in the manner required by it; and the sub-contractors and material men, having full knowledge of the contract, took their contracts of Reily, subject to the fulfillment of his, and are equally bound by it. Phillips on Mech's Liens, 155.

For the reasons hereinabove set forth, the decree of the court below is reversed, and the cause remanded.

Reversed and remanded.